**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MANUEL GARCIA UGALDE,

Petitioner

v.

TODD BLANCHE, *et al.*,

Respondents

Case No.: 2:26-cv-001243-APG-EJY

**Order (1) Granting in Part Amended Petition for a Writ of Habeas Corpus, (2) Granting Petitioner's Motions to Seal, (3) Denying Petitioner's Motion for a Temporary Restraining Order as Moot**

[ECF Nos. 10, 23-1, 24, 27]

Manuel Garcia Ugalde is a noncitizen currently detained by Immigration and Customs Enforcement (ICE). ECF No. 30-1 at 5. In 2022, Border Patrol apprehended him near the border and released him on his own recognizance. *Id.* at 6. Ugalde states, and the government does not refute, that in January 2026 he pleaded guilty to domestic battery and was given a suspended sentence pending counseling and community service. *Id.*; ECF No. 23-1 at 4. ICE then took him into custody on January 14, 2026. ECF No. 30-1 at 6. Ugalde requested a bond hearing, which was held on March 2, 2026. ECF Nos. 23-4 at 2; 26 Exhibit 3. The immigration judge (IJ) found that Ugalde did not have supporting evidence for bond and Ugalde withdrew his request after the IJ told him to request a new bond hearing once he had gathered the necessary evidence. *See* ECF No. 26 Exhibit 3 at 12:35-15:46.

Ugalde requested a new bond hearing and submitted evidence regarding his bond eligibility on March 23, 2026. ECF No. 23-5 at 2, 5. Soon after, the IJ held a hearing on the merits of his asylum and withholding of removal claims and found that his testimony and the documents supporting his bond eligibility did not meet the burden of proof for his claims. ECF No. 26 Exhibit 5 at 1:34:30-1:59:00. The IJ thus ordered him removed to Cuba. ECF Nos. 30-1

at 10; 26 Exhibit 5 at 2:02:57-2:03:01. The parties agree that Ugalde's request for a new bond hearing was then mistakenly marked as moot even though there was no final order of removal. ECF Nos 23-1 at 14; 30 at 13.

From about March 30 to April 17 of 2026, Ugalde went on a hunger strike, and he alleges that his appeal paperwork and mattress were kept from him on the condition that he end his hunger strike.[1] ECF Nos. 25 at 2; 25-1 at 2; 25-4 at 2. After the hunger strike, he timely appealed his removal order. ECF No. 23-6.

On June 17, 2026, the immigration court realized its error in marking Ugalde's request for a new bond hearing as moot and held one that same day. ECF No. 26 Exhibit 12 at 2:32-3:12. Ugalde was unable to contact his counsel before the hearing, but he waived his right to counsel during the hearing. *Id.* at 3:27-3:46, 4:58-5:29. The IJ asked Ugalde about a charge for driving under the influence that was on his I-213 form, but Ugalde stated he had never been pulled over for a DUI, and the IJ could not confirm the conviction. *Id.* at 4:36-4:50, 5:28-5:40, 6:40-6:58; 8:35-9:08; 11:57-12:20. The IJ asked how much money Ugalde could afford to post for bond, and Ugalde said he did not have anything and that his grandfather might be able to help him get enough money to pay a minimum bond of $1,500. *Id.* at 17:30-19:13.

The IJ found that Ugalde was not a danger to the community, but that he was a flight risk because of his order of removal, few family ties, and other "unfavorable evidence" in his record. *Id.* at 25:20-26:22, 26:45-27:21. The IJ granted bond in the amount of $15,000 and imposed electric monitoring. *Id.* at 26:23-26:45; ECF No. 30-1 at 12. The IJ asked if Ugalde wanted to appeal, and Ugalde said he would have to because he did not have $15,000. ECF No. 26 Exhibit

[1] Ugalde does not provide evidence that his appeal paperwork was conditioned on ending his hunger strike, but he argues that the timing corroborates his claim because he ended the strike on April 17 and submitted his appeal on April 27. ECF No. 23-1 at 27.

12 at 28:32-28:52. The IJ said he would send the appeal form to Ugalde, but the bond order marked Ugalde's appeal as waived. *Id.* at 29:36-29:40; ECF No. 30-1 at 13. Ugalde remains detained.

Ugalde filed an amended petition for a writ of habeas corpus seeking his release or a new bond hearing in which the government bears the burden by clear and convincing evidence before an IJ. He argues that the June 17 bond hearing was not constitutionally adequate and that he suffered punitive conditions in civil detention. The government argues that I do not have jurisdiction to review the bond decision, that Ugalde must exhaust his administrative remedies, and that the June 17 bond hearing was adequate. I grant Ugalde's amended petition in part and order the IJ to explain why the bond conditions he set were necessary to protect the government's interests, or if necessary, to hold a second bond hearing. I grant Ugalde's motions to seal his medical records and I deny his motion for a temporary restraining order as moot.

## I. PETITION FOR A WRIT OF HABEAS CORPUS

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to

immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003). I have "equitable discretion" "as law and justice require" for remedying unlawful detention in habeas petitions. *Brown v. Davenport*, 596 U.S. 118, 128, 134 (2022) (quotation omitted).

**A. I have jurisdiction to consider Ugalde's petition.**

Ugalde is detained under 8 U.S.C. § 1226(a) because he was previously released on his own recognizance.[2] The government does not argue that he is detained under any other statute. Under 8 U.S.C. § 1226(e), I may not "set aside any action or decision by the Attorney General under [section 1226] regarding the detention of any alien or the revocation or denial of bond or parole." However, § 1226(e) "restricts jurisdiction only with respect to the executive's exercise of discretion but that discretionary judgment does not include constitutional claims or questions of law." *Martinez v. Clark*, 124 F.4th 775, 781-82 (9th Cir. 2024) (quotation omitted). Here, Ugalde is arguing that the process the IJ used in determining his bond was constitutionally flawed and that his detention was unconstitutionally punitive. He is not appealing the IJ's discretionary decision to set the bond at a certain amount or with certain conditions. Therefore, I retain my habeas jurisdiction over his constitutional claims.

---

[2] "[R]elease on recognizance constitutes a form of conditional parole from detention housed in the provisions of § 1226's discretionary detention." *J.U. v. Maldonado*, 805 F. Supp. 3d 482, 493 (E.D.N.Y. 2025); *see Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007) (holding that the noncitizen was "conditionally paroled under the authority of § 1226(a)" when the government released him on his own recognizance soon after he entered the country); *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (BIA 2023) ("The [noncitizens] were detained for a few days after their initial apprehension and then released on their own recognizance pursuant to DHS' conditional parole authority under section 236(a)(2)(B) of the [INA], 8 U.S.C. § 1226(a)(2)(B).").

**B. I waive the requirement to exhaust administrative remedies.**

The government cites *Leonardo v. Crawford*, 646 F.3d 1157 (9th Cir. 2011), to argue that Ugalde must exhaust his administrative remedies before filing a habeas petition. *Leonardo* held that a noncitizen in removal proceedings must appeal an IJ's adverse bond determination to the BIA before seeking habeas review, "unless exhaustion is excused." *Id.* at 1160. This is a prudential requirement, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Alvarado v. Mattos*, No. 2:26-cv-00416-APG-DJA, 2026 WL 963227, at *2 (D. Nev. Apr. 9, 2026). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo*, 646 F.3d at 1160. I "may waive the prudential exhaustion requirement" if the "pursuit of administrative remedies would be a futile gesture." *Hernandez*, 872 F.3d at 988 (9th Cir. 2017) (quotation omitted).

The government argues that the factors in *Puga v. Chertoff* weigh in favor of requiring exhaustion because "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." 488 F.3d 812, 815 (9th Cir. 2007) (quotation omitted). Ugalde asks that I waive the requirement to exhaust administrative remedies because it would prolong his detention, it would not reward a deliberate decision to bypass administrative review, and the BIA is not the proper forum to resolve his constitutional claims.

Rather than deliberately attempting to bypass administrative review, Ugalde stated that he wanted to appeal, requested the form to do so, and was told it would be given to him. But there

is no evidence he was provided with the appeal form, and instead the IJ's custody redetermination order incorrectly marked his appeal as waived. ECF No. 30-1 at 13. Therefore, it is not clear that the administrative remedy of an appeal to the BIA was available to Ugalde, despite his stated intention to appeal. Consequently, I waive his requirement to exhaust administrative remedies under these circumstances.

**C. The IJ must explain why he set the bond at $15,000 or hold a second bond hearing.**

Ugalde argues that the June 17 bond hearing was not constitutionally adequate because the IJ did not meaningfully consider his ability to pay or alternatives to detention. The government argues that the IJ asked about Ugalde's finances, so he considered Ugalde's ability to pay.

Under § 1226(a)(1)(A), the Attorney General, as delegated to an IJ, may release a noncitizen on "bond of at least $1,500 with security approved by, and containing conditions prescribed by" the IJ. "The government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings, but any detention incidental to removal must bear a reasonable relationship to its purpose." *Hernandez*, 872 F.3d at 990 (simplified). "Detention of an indigent for inability to post money bail is impermissible if the individual's appearance at trial could reasonably be assured by one of the alternate forms of release." *Id.* (simplified). A "bond determination process that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's interests." *Id.* at 991. Failing to consider a noncitizen's financial ability to pay a bond or to consider alternative conditions of release "risks

detention that accomplishes little more than punishing a person for his poverty." *Id.* at 992 (quotation omitted).

Here, the IJ asked about Ugalde's ability to pay, and upon learning that he had no money in the bank and limited resources to fund his bond, decided to set his bond amount for ten times the minimum amount at $15,000 in addition to electric monitoring. The IJ did not explain why this amount was necessary to secure Ugalde's appearance at any subsequent proceedings, nor why that amount was necessary where the IJ also imposed electronic monitoring. The IJ said that he found unfavorable evidence in Ugalde's record, but he did not explain what that information was or how it contributed to Ugalde being a flight risk to the degree that a $15,000 bond plus electronic monitoring was reasonably related to mitigating that risk. Therefore, it is not clear that the IJ considered Ugalde's financial circumstances and alternative conditions before setting the amount, even though he asked how much money Ugalde had in the bank.

An IJ's consideration of these factors "does not guarantee that a non-citizen will actually be released on a bond that he is financially able to obtain once all risk factors are considered," but IJs "will certainly be less likely to impose an excessive bond if they are mandated to at least consider financial circumstances and alternative conditions before setting the amount." *Hernandez*, 872 F.3d at 993-94 (emphasis omitted). Therefore, I order the IJ to review his order and explain how, in the light of the availability of alternative conditions of release and Ugalde's inability to pay more than the minimum amount, $15,000 is reasonably related to mitigating the flight risk. If necessary, the IJ may hold a new bond hearing to determine additional facts. *See Portillo Portillo v. Bondi*, No. 2:26-cv-00155-CDS-NJK, 2026 WL 973078, at *2 (D. Nev. Apr. 10, 2026) (ordering the IJ to review a bond amount of $15,000 where it may have been a punishment for the petitioner's financial condition).

Ugalde asks me to shift the burden to the government to show by clear and convincing evidence that he is not a flight risk because the process he has received has been rife with errors, including mistakenly ruling his request for a bond hearing as moot, listing a DUI on his I-213 form instead of his domestic violence charge, and marking his bond appeal as “waived” when he verbally indicated that he wanted to appeal. If the IJ determines a new bond hearing is necessary, I do not order the government to bear the burden at that hearing. These errors, although very troubling, do not relate to Ugalde’s ability to present evidence to support his bond eligibility. Ugalde will have access to counsel and translation services at any new hearing, just as he did in the prior hearing. These circumstances do not meaningfully distinguish Ugalde from the facts in *Rodriguez-Diaz v. Garland*, where the Ninth Circuit found that it was not unconstitutional for a noncitizen to bear the burden of proof at his immigration bond hearings. 53 F.4th 1189, 1210 (9th Cir. 2022).

**D. Allegations of past punitive and coercive conditions of confinement do not justify release now.**

Ugalde alleges that during his hunger strike, the paperwork to appeal his removal order and his mattress were kept from him on the condition that he end his hunger strike. He argues that this amounts to punitive and coercive conditions of confinement that violate his Fifth Amendment rights in civil detention. The government does not respond to this argument.

Ugalde’s previous conditions of confinement do not justify his release now. The hunger strike has ended, and he is not currently suffering coercion or punishment that I could remedy through release. For now, his detention is permissible under § 1226(a), and releasing him from that detention now would not relate to previous unconstitutional conditions of confinement. I therefore do not release Ugalde on this basis.

## II. CONCLUSION

I THEREFORE ORDER that Manuel Garcia Ugalde's amended petition for a writ of habeas corpus **(ECF No. 23-1) is GRANTED in part**. By September 4, 2026, the immigration court must amend its bond determination and, if necessary, hold a new bond hearing, to explain the reasons for the $15,000 bond plus electronic monitoring and detail what was considered in reaching that determination.

I FURTHER ORDER that Ugalde's motions to seal his medical records **(ECF Nos. 10, 24) are GRANTED.**

I FURTHER ORDER that Ugalde's motion for a temporary restraining order **(ECF No. 27) is DENIED as moot.**

I FURTHER ORDER the clerk of court to close this case

DATED this 21st day of August, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE